UNITED STATES DISTRICT COURT FOR THE _MIDDLE_ DISTRICT OF FLORIDA
_JACKSONVILLE_ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

Herbert Demond York - pro-se ,

Inmate # _B02769_____ .

    (Enter full name of Plaintiff)

$3:13$-CV-$359$-J-$34$JBT

vs.

CASE NO: _____N/A_____

    (To be assigned by Clerk)

Barry Reddish; Captain C. Jakow-
ski; Lieutenant Curtis; Lieutenant
Noble; Sargeant Aldridge; Officer
S. Browning; and Officer Bracey, each,
are sued in their individual capacities

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

"DEMAND FOR JURY TRIAL"

### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

I.     **PLAINTIFF:**

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:   Herbert Demond York

Inmate Number     B02769

Prison or Jail:      Prison

Mailing address:   Union Correctional Institution
7819 North West 228th Street
Raiford, Florida 32026

II.    **DEFENDANT(S):**

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for every Defendant:

(1)    Defendant's name:    Barry Reddish
Official position:    Was the Warden of U.C.I.
Employed at:        Lawtey C.I
Mailing address:    _____

(2)    Defendant's name:    Captain C. Jakowski, Christopher
Official position:    Captain
Employed at:        Union Corr. Inst.
Mailing address:    7819 N.W. 228th St.
Raiford, Fla. 32026

(3)    Defendant's name:    Lievtenant Curtis. MARK
Official position:    Lievtenant
Employed at:        was at union c.I
Mailing address:    N/A

(See page 2A for additional defendants)

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

(4) Defendant's name: Lieutenant Noble Sidney

Official position: Lieutenant

Employed at: Union Corr. Inst.

Mailing address: 7819 N.W. 228th St.

Raiford, Fla. 32026


(5) Defendant's name: Sargeant Aldridge, Nathan

Official position: Sargeant

Employed at: Union Corr. Inst.

Mailing address: 7819 N.W. 228th St.

Raiford, Fla. 32026


(6) Defendant's name: Officer Browning, Shalen

Official position: Officer

Employed at: Union Corr. Inst.

Mailing address: 7819 N.W. 228th St.

Raiford, Fla. 32026


(7) Defendant's name: Officer Bracey, Lebrenti

Official position: Officer

Employed at: Union Corr. Inst.

Mailing address: 7819 N.W. 228th St.

Raiford, Fla. 32026

NOTE: THE COURT WILL NOT REVIEW THE MERITS OF THE COMPLAINT UNLESS THE FOLLOWING QUESTIONS HAVE BEEN ANSWERED REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES AND ANY PRIOR LAWSUITS THAT HAVE BEEN FILED.

**III.     EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a).  Plaintiff must submit copies of all grievances, appeals, and responses with this complaint to verify exhaustion.  Failure to demonstrate exhaustion may be grounds for dismissal.

**A.     DOES YOUR COMPLAINT CONCERN EVENTS OCCURRING WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS?**

Yes(✓)                              No( )

[If your answer is NO, proceed to Question B.  If your answer is YES, answer all of the following questions in this subsection.]

**1.     Informal Grievance**

a.     Did you submit an informal grievance?

Yes(✓)                              No( )

❖ If so, you must attach a copy of the grievance and response; exhibit _____

b.     If not, why?  <u>No responses to the grievances were received.</u>

**2.     Formal Grievance**

a.     Did you submit a formal grievance?

Yes(✓)                              No( )

❖ If so, you must attach a copy of the grievance and response; exhibit _____

b.     If not, why? _____

**3.     Appeal to the Office of the Secretary**

a.     Did you submit an appeal to the Office of the Secretary?

Yes(✓)                              No( )

❖ If so, you must attach a copy of the appeal and response; exhibit ___ and ___

b.     If not, why? _____

3

4. **Disciplinary Actions**

a. Did you have a disciplinary hearing concerning this matter?

Yes( ✓ )                    No( )

❖ If so, you must attach a copy of the disciplinary report and disciplinary hearing team's findings and decision to this form; exhibits ▅▅ .

b. Did you lose gaintime as a result of the disciplinary hearing?

Yes( ✓ )                    No( )

c. Has the gaintime since been restored?

Yes( )                    No( ✓ )

**B.   DOES YOUR COMPLAINT CONCERN EVENTS OCCURRING WITHIN A COUNTY JAIL OR DETENTION CENTER?**

Yes( )                    No( ✓ )

[If your answer is NO, proceed to Section IV of the complaint form.
If your answer is YES, answer the following questions.]

1. Is there a grievance procedure at your institution or jail?

Yes( )                    No( )

[If your answer is NO, proceed to Section IV of the complaint form.  If your answer is YES, answer all of the following questions in this subsection.]

2. Did you submit a grievance concerning the facts relating to your complaint?

Yes( )                    No( )

3. If your answer is YES:

a. What steps did you take? _____

b. What were the results? _____

❖ If so, you must attach a copy of the grievance and response; exhibit _____.

4. If your answer is NO, explain why not: _____

_____

4

NOTE: FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL
OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED,
THAT FACT MUST BE DISCLOSED AS WELL.

IV.     PREVIOUS LAWSUITS

A.     Have you initiated other actions in **state court** dealing with the same or similar
facts/issues involved in this action?
Yes( )                        No(✓)

    1. Parties to previous action:
       a.   Plaintiff(s): _____
       b.   Defendant(s): _____
    2. Name of judge: _____     Case #: _____
    3. County and judicial circuit: _____
    4. Name of judge: _____
    5. Approximate filing date: _____
    6. If not still pending, date of dismissal: _____
    7. Reason for dismissal: _____
    8. Facts and claims of case: _____
    _____

    **(Attach additional pages as necessary to list state court cases.)**

B.     Have you initiated other actions in **federal court** dealing with the same or similar
facts/issues involved in this action?

Yes( )                        No(✓)

    1. Parties to previous action:
       a.   Plaintiff(s): _____
       b.   Defendant(s): _____
    2. District and judicial division: _____
    3. Name of judge: _____     Case #: _____
    4. Approximate filing date: _____
    5. If not still pending, date of dismissal: _____
    6. Reason for dismissal: _____
    7. Facts and claims of case: _____
    _____

**(Attach additional pages as necessary to list other federal court cases.)**

5

C.  Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(✓)                    No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.  Parties to previous action:
    a.  Plaintiff(s): ___Herbert D. York___
    b.  Defendant(s): ___Hicks, Chestnut, Bailey, Harper, Lewis, Oliver, Garza, Puiles and S. Wilson.___
2.  District and judicial division: ___Middle District of Florida, Jacksonville Division___
3.  Name of judge: ___N/A___          Case #: ___3808-CV-945-TJC-JRK___
4.  Approximate filing date: ___October 1, 2008___
5.  If not still pending, date of dismissal: ___August 24, 2009___
6.  Reason for dismissal: ___Because the plaintiff failed to amend his Complaint.___
7.  Facts and claims of case: ___The plaintiff was subjected to excessive force by the above officials.___

    **(Attach additional pages as necessary to list cases.)**

    (See page 6A for additional list of previous lawsuits)

D.  Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:  Not sure

Yes( )                    No( )

1.  Parties to previous action:
    a.  Plaintiff(s): _____
    b.  Defendant(s): _____
2.  District and judicial division: _____
3.  Name of judge: _____   Case Docket # _____
4.  Approximate filing date: _____   Dismissal date: _____
5.  Reason for dismissal: _____

    **(Attach additional pages as necessary to list cases.)**

6

Second Lawsuit:

1. Parties to previous action:
    (a) Plaintiff(s): Herbert D. York
    (b) Defendant(s): F. Chestnut, J.R. Harris, J. Kelly, J. Nash and P.H. Christie

2. District and judicial division: Middle District of Florida, Jacksonville Division

3. Name of Judge: Unknown   Case # 3:10-CV-920-J-32TEM

4. Approximate filing date: October 5, 2010

5. If not still pending, date of dismissal: N/A

6. Reason for dismissal: N/A

7. Facts and claims of case: The plaintiff was subjected to excessive force by the above officials.


Third Lawsuit:

1. Parties to previous action:
    (a) Plaintiff(s): Herbert D. York
    (b) Defendant(s): R. Metz, E. Jackson, E. Williams, M. Brown, J. Combs, J. Mosley, B. Whitehead and B. Reddish.

2. District and judicial division: Middle District of Florida, Jacksonville Division

3. Name of Judge: Unknown   Case # 3:12-CV-630-J-99MMH-JBT

4. Approximate filing date: 5-29-12

5. If not still pending, date of dismissal: N/A

6. Reason for dismissal: N/A

7. Facts and claims of case: The plaintiff was subjected to excessive for and deprivation of life's basic necessities by the defendants.

## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u> You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. (If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)

1. Defendant Barry Reddish was, at all times relevant to this action, the warden of Union Correctional Institution (hereinafter U.C.I.). As such, he had the overall responsibility for supervising the governance, discipline, reassignment and policy-making at U.C.I., and enforcing all orders, rules, regulations and ect., including implementing protective and corrective actions through the grievance process and after internal investigations and complaints from others against particular staff misconduct. Additionally, he had the obligation to provide all inmates with the basic necessities of life, including personal safety, bedding, clothing and adequate warmth.

2. Defendant C. Jakowski, at all times material hereto, was the Captain in charge of the institutional staff and inmates on his shift. In that position, he was responsible for the care, custody and control of the inmates confined in the prison, including providing each inmate with the basic necessities of life; including personal safety, bedding, adequate warmth, and clothing.

3. Each employee of the FDOC (hereinafter FDOC) are authorized to use a variety of types of force where the circumstances warrant, including the use of chemical agents on inmates, as described in Rule 33-202.210, Florida Administrative Code (hereinafter F.A.C.), promulgated by the FDOC.

4. Rule 33-602.210(19)(i)(19)(e), F.A.C., states in relevant part that chemical agents shall not be used on inmates who are assigned

(See pages 7A through 7M for continuance of Statement of Facts)

to inpatient mental health care in a transitional care unit except when attempts by available mental health staff to otherwise deescalate and resolve the situation are unsuccessful and it appears reasonably necessary to disarm an inmate in possession of a weapon capable of causing injury to staff when other possible means of disarming the inmate pose a risk of injury to the staff involved.

5. The plaintiff was an inpatient mental health inmate housed in the transitional care unit in U-Dorm at the time of the events.

6. The plaintiff was not counseled with by the available psychiatric nurse to deescalate and resolve the situation prior to the use of chemical agents.

7. Rule 33-602.210(21)(a), F.A.C., provides that three(3) types of chemical agents may be used against prisoners: 0)eoresin Capsicum (pepper spray), Orthochlorbenzal Malononitrile or Orthochlorobenzylidene Malononitrile (CS tear gas) and Cloroacetophene (CN tear gas).

8. As described in Rule 33-602.210(21), F.A.C., each of these chemical agents causes, and is intended to cause, intense physical pains when applied to human beings. The physical effects described by the rule are as follows: (a) OC pepper spray "causes tearing, involuntary closing of the eyes, nasal discharge, sneezing, disoreintation, and the sensation of respiratory distress"; (b) CS tear gas "causes eyes to burn and tear, nasal discharge, and skin and upper respiratory irritation"; and (c) CN tear gas "causes tearing of the eyes, nasal discharge, and skin and upper respiratory irritation."

9. At the time of this incident, the DOC was using a brand of pepper spray that has a much higher percentage of active pepper, which causes, in addition to the above described effects, tremendous burning pains that lasts for hours and often for days once the pepper is absorbed into the pores in sensitive areas of the skin. Once

that occur, the pepper substance that is trapped in the pores will continue to flare up until it is sweated out, which causes a flare-up or continuation of the tremendous burning pains and suffering.

10. The DOC policy requires that certain actions be taken after chemical agents are used, including quickly removing the prisoner from the contaminated cell, allowing the prisoner to rinse the chemicals off in a cold shower, and returning the prisoner to a decontaminated cell.

11. The last of the above requirements were ignored by the defendants to intentionally increase the pains and suffering caused by the chemical agents.

12. Rule 33-602.210(2)(h), F.A.C. states that "no inmate shall be stripped of his clothing or comfort items for the explicit purpose of administering chemical agents."

13. The policy of the DOC governing the removal of an inmate's personal property, clothing or bedding from his possession permits the security officials to do so to prevent an inmate from inflicting injury to him or herself or others, to prevent the destruction of property or equipment, or to prevent the inmate from impeding security staff from accomplishing functions essential to the unit and institutional security. In that case, the inmate shall be provided a modesty garment. This security status is known as "strip" and "property restriction."

14. A modest garment is a green colored shroud of a thick material that covers the body from the legs to a person's shoulders and provides more warmth than just a pair of boxer shorts.

15. Turning to the events, on September 1, 2012 the plaintiff was housed in cell #U3113 at Union Correctional Institution (UCI) in the inpatient mental health Transitional Care Unit undergoing intensive treatment for his psychological and emotional

7B

disorders.

16. At approximately 8:30am defendants Aldridge, Bracey and Browning entered Quad #3 of U-Dorm where plaintiff was housed and announced to the inmates that each one must come out for their medical vital signs, which was a discretionary act.

17. As each inmate was getting their vital signs taken, defendants Bracey and Browning and Officer Crews searched their cells, removing and trashing items.

18. Sometime thereafter, the plaintiff was placed into handcuffs and removed from his cell for his vital signs to be taken.

19. At that time, Browning and Ofc. Crews entered plaintiff's cell for a cell search.

20. Defendant Bracey also entered the plaintiff's cell shortly after them.

21. Once the cell search was complete, the plaintiff was returned to his cell.

22. Upon entering the cell, the plaintiff noticed that all of his legal property had been removed from the envelopes and was strewn around the cell.

23. The plaintiff then searched around his cell for his ink pens and the legal documents he was comprising prior to exiting his cell so that he could reorganize and store his property back into the locker.

24. The plaintiff then discovered that his ink pens and numerous

pages of legal documents relating to two (2) pending lawsuits against UCI officials were missing from his cell.

25. The plaintiff then summoned the attention of defendant Bracey and demanded that they return his ink pens and legal documents.

26. Bracey replied, "Write it up" and further stated, "Stop bitching and shut the fuck up! I'm tired of hearing you cry like a bitch!"

27. When the plaintiff informed him that he would write it up and then continued to demand the return of his stolen property, defendant Bracey stated, "If you don't shut the fuck up, then I'll take the rest of your property and strip you."

28. At that time, the plaintiff called out several times for defendant Aldridge, but instead defendants Bracey and Browning approached his cell.

29. Defendant Browning then threatened to place the plaintiff on strip and throw away his property because of lawsuits the plaintiff had ongoing against his friends: Officers Nash, Kelley and Harris. He further threatened to have the plaintiff gassed if he didn't let the lawsuits go.

30. Defendant Aldridge then reentered the Quad and the plaintiff summoned him over to his cell to inform him of his stolen property.

31. After apprising him of the theft, Aldridge replied that the plaintiff had gotten what he deserved.

32. Defendant Browning interrupted Aldridge and ordered the plaintiff to submit to handcuffs so that he could be placed on seventy-two (72) hours property restriction.

33. Property restriction is a security status that an inmate is placed on for a minimum of seventy-two(72) hours in which all of his personal property, clothing, bedding, linen and comfort items are removed from the inmate's cell; thereby leaving him in only a pair of boxer shorts.

34. The plaintiff then refused to cuff up out of fear that he would be physically attacked by the defendants.

35. Thereafter, defendant Noble arrived to the plaintiff's cell after being summoned by Aldridge and ordered the plaintiff to cuff up because he was being placed on strip status.

36. The plaintiff informed defendant Noble that Aldridge, Bracey and Browning wanted to place him on property restriction out of retaliation for an ongoing lawsuit and for him demanding the return of his legal documents and ink pens.

37. Defendant Noble responded that the plaintiff was going on strip anyway because he had to back up his officers.

38. The plaintiff then reluctantly submitted to handcuffs and was removed from his cell, whereby Bracey and Browning entered his cell, searched it again and then removed all of his personal property, mattress, pillow, blanket, linen, clothing and comfort items.

39. The plaintiff was returned to his cell and his pants was taken; leaving him with only a pair of boxers and his prescription eye-glasses.

40. Afterwards, defendant Browning told the plaintiff that they would destroy some of his property because of grievances and lawsuits he had previously filed against his friends. Browning made further threats that the plaintiff would then be gassed to teach him a lesson.

41. During the feeding of the lunch meals, defendant Bracey refused to provide the plaintiff with his lunch meal although plaintiff stated he wanted to eat.

42. When Nurse R. Geay made her routine medical round in Quad Three, the plaintiff attempted to consult with her about some medical issues, but defendant Bracey told him to shut the fuck up and that he was going to get some hot sauce (chemical agents) on his ass.

43. Approximately ten minutes later, defendants Curtis and C. Jakowski approached plaintiff's cell and directed him to cuff up so his cell could be searched for the weapon he was accused of possessing by Bracey, Browning and Aldridge, but the plaintiff refused to cuff up.

44. The plaintiff then informed them that he was not cuffing up because his cell had been searched twice and he was in fear of being physically assaulted.

45. Defendant Curtis replied, "Well, then you can take the ass whipping like a man or get some gas."

46. The plaintiff then demanded that the hand-held videocamera be brought to his cell before he would exit it so that no attack would be attempted.

47. Defendant Curtis told the plaintiff to hold that thought and left with Jakowski to obtain authorization to utilize chemical agents on plaintiff.

48. Defendants Curtis and Jakowski returned to his cell with a canister of chemical agents and Sergeant Carasquillio.

49. Although defendant Jakowski ordered plaintiff to submit to handcuffs prior to the direction to administer chemical agents, he was gassed with a three(3) second burst of OC pepper spray by Sgt. Carasquillio upon the order of Jakowski even

though the plaintiff did not have a weapon in his possession or one capable of causing an injury to staff.

50. The plaintiff only had a staple that was left in his cell after the two(2) searches which he had used to put some stratches on his cell door window prior to defendants Curtis and Jakowski showing up.

51. As a direct and proximate cause of the use of chemical agents on the plaintiff, he began experiencing numerous effects of the pepper spray, such as tearing, involuntary closing of the eyes, nasal discharge, respiratory distress, sneezing, disoreintation and tremendous burning pains.

52. A couple of minutes later the plaintiff began pleading to be let out of the cell for a shower because his body felt like it was on fire.

53. Because the plaintiff only had on a pair of boxers, the pepper spray got all over his chest, face, hair, legs and crotch area.

54. Defendants Aldridge, Curtis and Noble's failure to protect the plaintiff from the unnecessary and vindictive use of chemical agents was done with deliberate indifference, negligence and maliciously and sadistically for the very purpose of allowing harm to be done to the plaintiff. Each of them could have took protective measures.

55. Approximately three(3) minutes later the plaintiff was allowed to cuff up and exit his cell for a cold water shower.

56. After the shower, the plaintiff's pains and suffering increased two-fold. He was then examined by the nurse and was returned to his cell.

57. Upon reentering his cell, the plaintiff noticed that there was still

chemical agents on the walls, sink, toilet, back window and both bunks after the inmate orderlies was suppose to have decontaminated the cell.

58. On information and belief, the officer who was supervising the orderlies told them just to mop the floor and not wipe anything down. Therefore, the cell was not properly decontaminated according to the policy of the DOC.

59. Because the plaintiff did not have anything to clean the remaining pepper spray off of his bunks, sink, toilet and walls, he was compelled to live and lay in the contaminated cell for over four (4) days until he got some soap and materials to decontaminate his cell.

60. During the four (4) days he was on strip, the burning pains and suffering was constant and kept recurring because of the active pepper and had continued for a few days after he was removed from property restriction status.

61. As a direct and proximate result of the plaintiff being placed on property restriction, he was forced to sleep on a cold concrete bunk that caused him extreme discomfort and body aches. Furthermore, because the cells have cold air blowing out of the vent, the plaintiff was shivering when he was not burning from the pepper spray. The only means the plaintiff had of keeping warm was the burning of the pepper spray.

62. In order to cover-up the retaliatory and unnecessary use of chemical agents and property restriction, defendant Aldridge wrote the plaintiff two (2) false disciplinary reports for Destruction of State Property and Possession of a Weapon on September 1, 2012, which the plaintiff was later convicted of and sentenced to a total of one-hundred and twenty (120) days in disciplinary confinement with sixty (60) days loss of future gain time and restitution in the amount of fifty (50) dollars.

63. Defendant Jakowski participated and acquiesced in the behavior

7th

of his subordinates with full knowledge that the use of force and property restriction was unnecessary to maintain or restore order because such actions were unwarranted.

64. Furthermore, defendants Aldridge, Bracey, Browning, Curtis, Noble and Jakowski had all acted in bad-faith, maliciously and sadistically for the very purpose of causing harm to plaintiff and with a wanton and willful disregard of plaintiff's safety and human rights.

65. Thereafter, on September 5, 2012 between 1:00 — 2:30 ᴾᴹ defendant Aldridge and Officer Johnson approached the plaintiff's cell with a cart that held a mattress, bed roll (blanket, 2 sheets and pillow case) and a plastic bag of property.

66. The plaintiff submitted to handcuffs and the plaintiff briefly exited his cell while an inmate orderly placed the property, mattress and bed roll inside of the cell.

67. At that time, the plaintiff noticed that some of his legal documents were tore and that other property items were missing. Afterwards, the plaintiff asked Aldridge where was the rest of his property. Aldridge replied, "This property was upstairs in Lt. Kilgore's office. The rest of your property was sent to the Property Room."

68. The plaintiff then submitted an Inmate Request Form to the Property Room Supervisor, Sgt. S.K. Watts on September 3, 2012 requesting the delivery of the property stored on September 1, 2012. Sgt. Watts responded on September 5, 2012 that the plaintiff did not have any property stored dated September 1, 2012.

69. The plaintiff discovered that defendants Bracey, Browning and Aldridge had deprived him of the following property items: Approximately seven-hundred and ninety-seven (797) pages of legal documents; one book titled, "Legal Brief You Can Use If You're Charged W/Driving Without A License"; one Pro-Se Handbook;

7I

one book titled "Maritime Jurisdiction of Courts Exposed"; one Black's Law Dictionary; one Thesaurus; one Protecting Your Health and Safety book; one GED book; one Consumer Action Handbook; one Criminal Law in a Nutshell book; one Prisoners and the Law book; one Rights of Prisoners book; one Jailhouse Lawyers Manual, 4th Ed.; one Prisoners Self-Help Litigation Manual; one Federal Rules of Civil Procedure book; one Anti-Sovereign Book to Judges; one Hebrew Bible; one Qurán; one photocopy of the Florida Constitution; twelve legal pamphlets; about Fifty(50) personal and legal letters; one Long John's top and bottom set; forty 45 ¢ Forever postage stamps; twenty-five #10 envelopes; one pack of writing paper; one Dry Idea deodorant; and approximately seventy-five(75) pages of miscellaneous documents.

70. The above property items were never returned and no compensation or replacement items were provided.

71. As a direct and proximate result of defendants Aldridge, Bracey, Browning and Noble's actions in placing the plaintiff on property restriction status for over four (4) days vindictively for filing grievances and lawsuits, the plaintiff suffered mental anguish, emotional distress, physical pains and suffering for approximately seven(7) days.

72. As a direct and proximate cause of Aldridge, Curtis and Noble's failure to intervene and protect plaintiff from the unjustified and excessive use of chemical agents by Sgt. Carasquillio upon the order of defendant Jakowski, the plaintiff suffered physical injuries, physical pains, mental anguish and emotional distress.

73. As a direct and proximate result of defendants Curtis and Jakowski's order to use chemical agents on the plaintiff although it was unwarranted, the plaintiff suffered physical injuries, physical pains, mental anguish and emotional distress.

74. On information and belief, the officers at UCI had an unwritten policy or custom of retaliating against and/or punishing inmates who frequently file griev-

ances, complaints or lawsuits against correctional staff members by placing them on property restriction and writing fictitious disciplinary reports to justify their actions. This policy was started by former Assistant Warden Brad Whitehead and/or worsened after his arrival at UCI and existed before defendant Reddish became Warden, but was continued in force by Reddish.

75. On information and belief, defendant Reddish were aware of or should have been aware of this policy or custom and knew of the serious risk of such a policy or custom and instead of correcting or alleviating the violations and abuses of authority, he condoned and continued it. Although, he may have sometimes disciplined officers for committing violations, he had never, or did not routinely, punish any official(s) for improper use of property restriction,

76. On information and belief, the officials at UCI had an unwritten policy or custom of physically abusing inmates with chemical agents and physical abuse as punishment and recreation, especially inmates who constantly file grievances, complaints or lawsuits against correctional officials. This policy or custom existed prior to Reddish arriving at UCI, but was continued in force by them and even worsened during his tenure.

77. On information and belief, defendant Reddish were aware of or should have been aware of this policy or custom and knew of the serious risk of such a policy or custom and instead of correcting or alleviating the constant abuse he continued and condoned it. Although he may have sometimes disciplined officials in cases of clear abuse, he did not routinely punish officials for abuse unless compelled to.

78. On information and belief, defendant Reddish were aware of or should have been aware of the widespread physical abuse of inmates at UCI by correctional staff, but failed to take serious actions to curb the abuse or make a reasonable and good-faith effort to minimize the risk of danger posed to the inmates under his care.

79. On information and belief, defendant Reddish were aware of or should have been aware of the widespread use or misuse of property restriction status to retaliate against, punish and torture inmates through the many grievances and complaints that were communicated to him by inmates, staff members, relatives, friends and others. Despite his knowledge, Reddish failed to take any reasonable actions to ensure proper supervision and discipline. His failure(s) led the officials under his authority to believe they could abuse, torture and retaliate against inmates for unlawful reasons at will and with impunity.

80. On information and belief, defendant Reddish had been placed on notice of their subordinates widespread use of physical abuse and misuse of property restriction status against the inmates under his care through many complaints, grievances, letters and ect., but failed to take any reasonable actions to properly supervise and discipline his officials. Instead, he often encouraged such abusive actions.

81. Defendant Reddish had the responsibility and authority to impliment corrective actions by either reprimanding, reassigning or terminating the officials abusing the rules and/or inmates.

82. Rule 33-602.210, F.A.C., requires that all uses of force incidents be reviewed by the warden and either approved or disapproved by him or her.

83. Although all investigations of inmates' claims of excessive and unjustified uses of force are conducted by the Inspector General's Office, any findings or conclusions are sent to the institutional warden to take any actions deemed necessary and appropriate.

84. Furthermore, Rule 33-103, F.A.C. requires that all institutional wardens investigate, respond to and take any necessary actions on all formal grievance submitted at their institution.

85. Defendant Reddish, because of his intentional and/or negligent failure to meet his responsibilities, had acted with deliberate indifference to the substantial likelihood that his subordinates would contrive to use unjustified and/or malicious and sadistic force with chemical agents for the very purpose of causing harm.

86. Defendant Reddish failed to properly supervise, manage and discipline his subordinates to ensure their compliance with the rules, regulations, policies, laws and directives regarding the use of chemical agents on mental health inpatient inmates and other inmates.

87. The actions or inactions of defendant Reddish contributed to and proximately caused the injuries and suffering sustained by the plaintiff.

88. The actions of defendants Jakowski, Curtis, Noble, Aldridge, Bracey and Browning in placing the plaintiff on property restriction status and using chemical agents on him because of previously filed grievances and lawsuits against staff members constituted retaliation for the exercise of his constitutional right to seek redress of grievances and accessing the courts.

89. Each defendant is being sued in their individual capacity.

90. Each defendant had acted under color of state law at all times relevant to this complaint.

91. The plaintiff also alleges the torts of assault and battery, negligence, intentional infliction of emotional distress, retaliation and deprivation of personal property.

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

1. The actions of defendants Noble, Aldridge, Bracey and Browning in placing the plaintiff on property restriction status and having him sprayed with chemical agents for filing grievances and lawsuits against DOC staff constituted retaliation for petitioning the government for redress of grievances in violation of the First Amendment to the U.S. Constitution and any corresponding state laws.

2. The actions of defendants Aldridge, Bracey, Browning and Noble (see pages 8A through 8B for additional statement of claims).

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

A. Issue a declaratory judgment stating that:

1. The physical abuse of the plaintiff by defendants C. Jakowski and Curtis violated his rights under the Eighth Amendment to the U.S. Constitution and constituted the torts of assault and battery, negligence and intentional infliction of emotional distress under the state law of Florida. (see pages 9 and 9A for additional Relief Requested)

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.

_4/3/13_
(Date)

_Herbert Demond York #B02169_
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on:
the _3_ day of _April_, 20 _13_.

_Herbert Demond York #B02169_
(Signature of Plaintiff)

Revised 07/02

8

in placing the plaintiff on property restriction status for unjustifiable reasons and depriving him of his legal documents, personal property, mattress, pillow, blanket, sheets, clothes, hygienic and comfort items under the circumstances constituted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and an intentional infliction of emotional distress under the state law of Florida.

3. The actions of defendants Curtis and Jakowski in directing and supervising the unjustifiable use of chemical agents against the plaintiff were done vindictively, wantonly, in bad-faith and maliciously and sadistically for the very purpose of causing harm in violation of the First and Eighth Amendments to the U.S. Constitution, and thereby constituted the torts of negligence, assault and battery and intentional infliction of emotional distress under the state laws of Florida.

4. The actions of defendants Aldridge, Curtis and Noble in failing to intervene to protect the plaintiff from the unjustified and excessive use of force by Sgt. Carasquillio were done with deliberate indifference, maliciously and sadistically to cause harm to the plaintiff and were committed in bad-faith with a malicious intent or in a manner exhibiting wanton and willful disregard of his human rights and safety in violation of the Eighth Amendment to the U.S. Constitution and constituted the torts of negligence and intentional infliction of emotional distress under the state laws of Florida.

5. The failures of defendant Reddish to properly supervise, manage, discipline and/or reassign abusive correctional officials in light of the widespread abuse of prisoners in general and chemical agents in particular with knowledge of the many complaints of such abuse constituted deliberate indifference and contributed to and proximately caused the herein violations in violation of the Eighth Amendment to the U.S. Constitution and constituted the torts of negligence and intentional infliction of emotional distress under

the state laws of Florida.

6. The actions of defendant Reddish in failing to take any corrective actions to stop or discourage his subordinates from complying with the unwritten policies or customs of physically abusing inmates for retaliatory, punitive or torturous reasons and using property restriction status as a discipline, torturous and retaliation tool constituted deliberate indifference and contributed to and proximately caused the plaintiff's injuries, pains and suffering in violation of the Eighth Amendment to the U.S. Constitution and constituted the torts of negligence and intentional infliction of emotional distress under the state laws of Florida.

7. The failures of defendants Reddish, Noble, Aldridge, Bacey and Browning to provide the plaintiff with bedding and/or clothing to ensure his adequate warmth under the circumstances during his four(4) days of property restriction constituted deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and constituted the tort of intentional infliction of emotional distress under the state law of Florida.

8. The actions of defendants Aldridge, Bracey and Browning in taking and/or destroying the plaintiff's legal materials and personal property without due process of law or compensation was done deliberately, negligently, and wantonly in violation of the First, Fourth and Fourteenth Amendments to the U.S. Constitution and constituted the torts of negligence, deprivation of property and other related laws under the state law of Florida.

2. The failure of defendants Curtis, Noble and Aldridge to protect the plaintiff from the unjustified and excessive use of chemical agents violated his rights under the Eighth Amendment to the U.S. Constitution and constituted the torts of negligence and intentional infliction of emotional distress under the state law of Florida.

3. The failures of defendant Reddish to take disciplinary or other actions to curb the constant use of unjustified and excessive uses of physical force and chemical agents by his security officials violated the plaintiff's rights under the Eighth Amendment to the U.S. Constitution and constituted the tort of negligence under the state law of Florida.

4. The failures of defendant Reddish to take disciplinary or other actions to stop or curb the frequent abuse and use of unjustified property restriction status to retaliate against, punish or torture inmates violated plaintiff's rights under the Eighth Amendment to the U.S. Constitution and constituted the tort of negligence under the state law of Florida.

B. Award compensatory damages jointly and/or individually against defendants Aldridge, Bracey and Browning in the amount of $800.00 for the deprivation of the plaintiff's legal materials and personal property;

C. Award compensatory damages jointly and/or individually against defendants Reddish, Jakowski, Curtis, Noble, Aldridge, Bracey and Browning for the physical, psychological and emotional injuries he sustained as a result of the retaliation, property restriction and use of chemical agents;

D. Award punitive damages jointly and/or individually against defendants Reddish, Jakowski, Curtis, Noble, Aldridge, Bracey and Browning;

E. Award reimbursements for any costs or fees incurred by the

9

plaintiff as a result of the preparation, filing and litigation of this action;

F. Award attorney fees and costs pursuant to 42 U.S.C. §1988, if appropriate;

G. A trial by jury on all issues so triable;

H. Award such other or further relief as the court deems just and proper.